UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
CIVIL CASE NO.

| | |
|---|---|
| **ONYEKACHI NWABUKO and SHRISTI SHRESTHA,** | ) ) ) |
| Plaintiffs, | ) ) |
| **v.** | ) ) |
| **PATRICK MOURATOGLOU; TENNIS PRO FLORIDA, LLC; PASCAL COL-LARD and GABRIELLA COLLARD; MOURATOGLOU TENNIS CENTER ZEPHYRHILLS, LLC; and MOURATOGLOU ACADEMY U.S. HOLDINGS, INC.,** | ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

---

**COMPLAINT WITH DEMAND FOR JURY TRIAL**

---

COMES NOW Plaintiffs, **ONYEKACHI NWABUKO** and **SHRISTI SHRESTHA**, husband and wife, ("Plaintiffs"**), by** and through their under-signed attorney, and file this their *Complaint With Demand for Jury Trial* against Defendants, **PATRICK MOURATOGLOU; TENNIS PRO FLOR-IDA, LLC; PASCAL COLLARD and GABRIELLA COLLARD; MOURATOGLOU TENNIS CENTER ZEPHYRHILLS, LLC; and MOURATOGLOU ACADEMY U.S. HOLDINGS, INC.,** and so state:

I.
INTRODUCTION

1

This is an action for compensatory and punitive damages exceeding $2,500,000.<sup>00</sup> exclusive of interests and costs, under the federal civil R.I.C.O. Act; *Federal* Trade Commission Act: Unfair or Deceptive Acts or Practices; and state law conversion, fraud, and breach of contract, in this non-construction and non-defective product contract claim, wherein independent duties of care beyond the contract claims exist as well. Plaintiffs suffered substantial damages. Defendants, The Collards and Mouratoglou are owners operating all Defendant businesses named herein as their primary places of business physically in Pasco or Pinellas County, Florida.

## II.

### III.    JURISDICTION, VENUE, AND PARTIES

1.  Jurisdiction is properly invoked in this court pursuant to 15 U.S. Code § 45 and 28 U.S. Code § 1332 diversity of citizenship jurisdiction, and tort laws of Florida. Jurisdiction is founded on 28 U.S.C. §§ 1331, 1343, 15 U.S. Code §45, 18 U.S. Code §§1964 and 1962, 28 U.S. Code § 1332, and supplemental jurisdiction is proper pursuant to 28 U.S.C. § 1367(a) because they form part of the same case or controversy. Plaintiffs seek compensatory and punitive damages exceeding the statutory minimum exclusive of costs and interests.

1.  Diversity of citizenship exists in the instant case wherein Defendant Patrick Mouratoglou resides outside of Florida.  However, he operates and is the sole owner of two Defendant businesses physically located and head-quartered in Pasco and Pinellas Counties, Florida, and second-largest major-ity owner of one Pasco County Defendant business (Tennis Pro) along with Defendants The Collards who reside in Pasco County, Florida. Plaintiffs re-side in Pasco County, Florida. The acts and omissions giving rise to these claims accrued in Pasco and Pinellas Counties, Florida.

2.  Defendants conduct their business in Florida and in interstate com-merce, offering their business tennis services, coaching, training, and prod-ucts to consumers in Florida and nationwide.  Patrick is the publicly well-known and televised former coach of tennis great Serena Williams, including during multiple of her victorious grand slams and return to #1 ranking in the tennis world.

3.  Venue is proper under 28 U.C.S. § 1391(b)(2) because a substantial part of the events or omissions accruing these claims occurred in Pasco County, Florida, which is subject to this judicial district and division.

4.  Plaintiffs, **ONYEKACHI NWABUKO and SHRISTI SHRESTHA,** are a married couple and consumers residing in Pasco County, Florida. The acts

and omissions claimed herein against all Defendants giving rise to this case substantially accrued in Pasco County, Florida. ONYEKACHI NWABUKO and SHRISTI SHRESTHA are subject to this judicial district and court division's subject matter and personal jurisdiction.

5. Defendant, **PATRICK MOURATOGLOU, (**"Mouratoglou"**),** resides in California at C/O Malom Consulting, 8788 Shoreham Drive, APT 11, West Hollywood, CA 90069. He is a majority owner and shareholder of Florida LLC Tennis Pro, LLC, ("Tennis Pro"), physically located and headquartered in Pasco County, Florida, at 3988 Aldea Way, Wesley Chapel, Florida 33543. Its Registered Agent is in Pasco County, Florida. Patrick is also the sole manager and officer of Mouratoglou Tennis Center Zephyrhills, LLC ("Zephyrhills"), a Delaware LLC physically primarily located and headquartered in Pasco County, Florida, at 6585 Simons Road, Zephyrhills, FL 33541. Its Registered Agent is in Plantation, Florida. Mouratoglous is further the sole manager and officer of Mouratoglou Academy U.S. Holdings, INC., ("US Holdings") a Delaware LLC physically primarily located and headquartered in Pinellas County, Florida, at 7904 Fourth Street North, STE 300, St Petersburg, FL 33702. Its Registered Agent is in Plantation, Florida. Mouratoglou is also the owner along with Raphael Mouratoglou of MOURATOGLOU

APPAREL US INC., a Delaware LLC physically located in Florida at 252 NW 29th Street, Miami FL  33127. Its registered agent is in Plantation, FL. Mouratoglou individually and in conspiracy with the remaining named Defendants, targeted, misled, committed fraud against, lured, benefited financially and reputationally, and caused his companies to benefit financially and reputationally, from his egregious fraudulent and intentional unlawful acts against Plaintiffs claimed herein, also piercing any LLC protections. Mouratoglou has more than enough frequent contacts, business dealings, and unlawful acts against Plaintiffs accruing in Florida to bring him under this Court's personal and subject matter jurisdiction in the instant case.  Punitive damages are also sought against Mouratoglou.

6.   Defendant, **TENNIS PRO FLORIDA, LLC;** ("Tennis Pro") is a Florida limited liability company, physically primarily located and headquartered in Pasco County, Florida, with its principal place of business located at 3988 Aldea Way, Wesley Chapel, Florida 33543.  Its Registered Agent is Defendant Gabriella Collard, also a Managing Partner who founded the company. Her husband Pascal Collard co-founded the company and is a Managing Partner as well.  The Collards reside in Pasco County, Florida. Tennis Pro does business and operates in Florida and interstate commerce, selling its

tennis business coaching, training, services, and products, to consumers in Florida and nationwide.  Its majority owners and shareholders, representatives, agents, and final decision makers are Gabriella Collard, Pascal Collard, and Patrick Mouratoglou, who collectively own 94.5%. Plaintiffs own 5.5%. Tennis Pro, through its representatives, managers, final decision-makers, agents, owners, employees, and/or assigns, committed, ratified, and continued, its intentional unlawful acts and omissions against Plaintiffs giving rise to Plaintiff's claims herein, and benefitted financially and reputationally from its intentional unlawful acts and omissions against Plaintiffs. Tennis Pro is subject to this judicial district and court division's subject matter and personal jurisdiction.

7.    Defendants, **PASCAL COLLARD and GABRIELLA COLLARD,** ("The Collards") are a married couple residing in Pasco County, Florida, and are the founders, majority owners, shareholders, and managers, of the Florida-formed LLC Defendant Tennis Pro, LLC, ("Tennis Pro").  Mrs. Gabriella Collard is the Registered Agent and co-founder of Tennis Pro. Tennis Pro is physically primarily located and headquartered in Pasco County, Florida, at 3988 Aldea Way, Wesley Chapel, Florida 33543.  The Collards themselves and in conspiracy with Defendants Patrick Mouratoglou, Tennis Pro LLC,

and Mouratoglou's Florida businesses Mouratoglou Zephyrhills and Mouratoglou US Holdings, unlawfully intentionally targeted, misled, lured, defrauded, benefited financially and reputationally, and caused himself to benefit financially and reputationally, from his egregious and intentional unlawful acts including fraud against Plaintiffs as claimed herein, piercing any LLC protections. The Collards preyed on Plaintiffs by using their longstanding friendship with Plaintiffs as leverage, knowing Plaintiffs blindly trusted The Collards and would forego deeper vetting than with any other business, solely due to and motivated by that friendship and trust. Punitive damages are also sought against The Collards, and they are subject to this judicial district and court division's subject matter and personal jurisdiction.

8. Defendant, **MOURATOGLOU TENNIS CENTER ZEPHYRHILLS, LLC,** (A/K/A Mouratoglou Tennis Academy but herein referred as "Zephyrhills" to avoid confusion of the multiple Mouratoglou named Florida businesses), is a Delaware LLC physically located and operating in Florida and interstate commerce in Pasco County, FL, at 6585 Simons Road, Zephyrhills, FL 33541. Its Registered agent is located at CT Corporation System, 1200 S. Pine Island Rd, Plantation FL 33324. Mouratoglou started this company after Defendants sold 5% ownership to Plaintiffs and subsequently diluted

Plaintiffs' ownership value to $90,000 in agreement with Mouratoglou without Plaintiffs' consent and committed and continues to commit the other unlawful acts against Plaintiffs claimed herein itself and in agreement with Defendants. Mouratoglou is the owner, President, and sole officer of Defendants Zephyrhills and US Holdings, and the second-largest majority owner and shareholder of Tennis Pro along with Collard who is the largest majority owner and shareholder.  Zephyrhills was thereby able to obtain, access, operate, control, and act upon Tennis Pro's financial information, internal operations, expansion, partnership, profits, and internal governance, in ways that non-owners nor the general public could not obtain, access, operate, act, or control, including to use its famed influence as owned by Mouratoglou in tennis business dealings.  Zephyrhills, through its owners, representatives, agents, managers, employees, and/or assigns,  unlawfully intentionally controlled, benefitted financially and reputationally from, conspired, and influenced its egregious and intentional unlawful acts including fraud against Plaintiffs as claimed herein.  Zephyrhills has more than enough frequent contacts, business dealings, and unlawful acts against Plaintiffs in the state of Florida from its contacts and business dealings in Florida, to bring it under the personal and subject matter jurisdiction of this Court to answer Plaintiffs'

claims.  Punitive damages are sought against this Defendant. Zephyrhills is subject to this judicial district and court division's subject matter and personal jurisdiction.

9.  Defendant, **MOURATOGLOU ACADEMY U.S. HOLDINGS, INC., (**"US Holdings"**),** is a Delaware LLC physically primarily located, headquartered, and operating in Florida and interstate commerce in Pinellas County, FL, at 7904 Fourth Street North, STE 300, St Petersburg, FL  33702.  Its Registered Agent is in Plantation, Florida.  Mouratoglou is the owner, President, and sole officer of Defendants US Holdings and Zephyrhills, and the second-largest majority owner and shareholder of Tennis Pro along with Collard who is the largest majority owner and shareholder. US Holdings was thereby able to obtain, access, operate, control, and act upon Tennis Pro's financial information, internal operations, expansion, partnership, profits, and internal governance, in ways that non-owners nor the general public could not obtain, access, operate, act, or control, including to use its famed influence as owned by Mouratoglou in tennis business dealings to induce Plaintiffs to enter contract with and purchase 5.5% of Tennis Pro based on offered private lessons from Mouratoglou that Plaintiffs' kids never received, and agree to Mouratoglou's 34% purchase of Tennis Pro. All

Defendants withheld their material conspired term that they would subsequently unlawfully dilute the value of Plaintiffs' ownership shares from $275,000 to $90,000 for the same 5.5% ownership, and never transfer any ownership shares, revenue, or profits to Plaintiffs. US Holdings benefitted financially and reputationally from this unlawful and fraudulent expansion of its tennis holdings in Florida, a well sought after state and home of multiple tennis champions. US Holdings, through its owners, representatives, agents, managers, employees, and/or assigns, unlawfully intentionally controlled, benefitted financially and reputationally from, conspired, and influenced its egregious and intentional unlawful acts including fraud against Plaintiffs as claimed herein. US Holdings has more than enough frequent contacts, business dealings, and unlawful acts against Plaintiffs accruing in the state of Florida from to bring it under the personal and subject matter jurisdiction of this Court to answer Plaintiffs' claims. Punitive damages are sought against this Defendant. US Holdings is subject to this judicial district and court division's subject matter and personal jurisdiction.

10.Plaintiffs have met all conditions precedent to this action.

## III.

## GENERAL FACTS

11.  Plaintiffs re-allege and incorporate paragraphs 1 – 11 as if plead herein.

12. Defendants collectively for all Defendants) are located in Florida.

13. Defendants, as tennis businesses offering tennis services, coaching, and products in interstate commerce, advertise their services, coaching, and products to consumers in Florida and outside of Florida.

14. Defendants, as business owners who lured and asked consumer Plaintiffs to purchase ownership shares in their business, have a duty to Plaintiffs not to spoil, ruin, devalue, nor thwart the business or its purpose.

15. Plaintiffs ONYEKACHI NWABUKO and SHRISTI SHRESTHA are a married couple who on January 2, 2024, entered a written Share Purchase Agreement ("Contract") with Defendants The Collards' Tennis Pro to purchase 5.5% ownership of Tennis Pro for $275,000 cash. At that time, The Collards were the 100% owners and founders of Tennis Pro.  [**EXHIBIT A**].

16. The Collards and Plaintiffs were good friends.

17. In reliance and trust based on their friendship, Plaintiffs accepted The Collards and Tennis Pro's offer and paid the $275,000 consideration via

cashier's check.  The Collard and Tennis Pro accepted the payment.

18. The Collards intentionally and with agreement unlawfully targeted and lured consumers Dr. Nwabuko and his wife Ms. Shrestha – Plaintiffs, who were their personal friends -- to pay the $275,000 consideration, only to refuse to ever deliver the ownership shares, any shares, profits, revenue, or honor the contract in any substantially or partially.

19. Another material term of the Agreement for which Plaintiffs bargained and paid the $275,000 cash included tennis lessons for Plaintiff's two kids until the age of 18 years from Defendant Patrick Mouratoglou.

20. Mouratoglou is the former well-known professional coach of Serena Williams during multiple of her winning matches and Grand Slams.  He was on television as her coach during her matches, coaching and family box, and publicly acclaimed by both Serena and himself as her coach.

21. Defendants promised Plaintiffs that being in partnership with Mouratoglou would bring high quality and name recognition to Tennis Pro LLC, thereby increasing customer enrollment, revenue, and profits for Plaintiffs to receive.

22. However, after Plaintiffs paid the $275,000, to include after Mouratoglou also became a majority owner, no Defendant ever delivered or

transferred any of the contract 5.5% partnership/ownership shares to Plaintiffs, provided the contracted tennis lessons, or provided Plaintiffs with any profits or revenue from Tennis Pro despite Plaintiff's multiple requests.

23.  The Collards sold 34% of Tennis Pro to Mouratoglou for $1,125,000, after selling 5.5% to Plaintiffs for $275,000.  Mouratoglou as a majority owner of Tennis Pro also had the duty to ensure that Plaintiffs' ownership shares were delivered, revenue shared with Plaintiffs, profit was shared with Plaintiffs, and to provide the agreed tennis lessons to Plaintiffs children.

24. Defendants had and have the duty to Plaintiffs not to thwart or breach their contract with Plaintiffs, but to instead provide all contracted services.

25. Defendants had and have the duty not to Plaintiffs waste or dilute company assets to the detriment of one of the owners.

26. Defendants had and have the duty to Plaintiffs to disclose to and share with Plaintiffs all revenues, profits, and financial documents for Tennis Pro.

27. Mouratoglou had the duty to provide the agreed tennis lessons to Plaintiffs' children.

28. After Defendants breached the contract including their ongoing re fusal to deliver the ownership shares to Plaintiffs, Plaintiffs requested return of their $275,000.  Defendants repeatedly refused.

29.Instead, Defendants refused to return Plaintiffs' money or provide the remaining contracted services.

30.The Collards and Mouratoglou even unlawfully, shockingly, intentionally, fraudulently, and unknown to Plaintiffs and without Plaintiffs consent, alleged Plaintiffs' $275,000 ownership to then be worth only $90,000.

31.No public shares were sold to the public by Tennis Pro.

32.Mouratoglou opened additional national tennis businesses in Florida: Mouratoglou Academy U.S. Holdings, INC., Mouratoglou Tennis Center Zephyrhills, and Mouratoglou Apparel US, Inc., as a benefit of his majority ownership of Tennis Pro with The Collards.

33.The Collards benefited financially from Tennis Pro and their partnership with Mouratoglou as well.

34. As a result, Defendants created and then held the monopoly of esteemed high-reputation tennis academies and businesses located in Pasco and Pinellas Counties, Florida, especially with the well-known Mouratoglou at the public helm, offering their business services in interstate commerce.

35.Florida is a go-to tennis training state for multiple tennis champions, including the Williams Sisters, Sharapova, and Gauff.

36. By Defendants luring in Plaintiffs as consumers to purchase 5.5%

ownership for $275,000, Defendants were able to create new tennis business partnerships for less money for Mouratoglou, open new tennis academies, and create a tennis business monopoly in Florida, all to the financial detriment of the Plaintiff consumers and in breach of Defendants ' promises and duties.

37. However, all Defendants impeded Plaintiffs from enjoying any financial benefit or any other business benefits from the 5.5% ownership interest Defendants induced Plaintiffs to buy and retain.

38. When Plaintiffs kept demanding their money back after all Defendants breached the agreement, Defendants sent Plaintiffs on a wild-goose-chase of contacting Defendants lawyers about the breached contract, only for Defendants lawyers to refuse to return the money and direct Plaintiffs to stop contacting the law office of Defendant's counsel.

39.  Defendants intentionally lured, induced, conspired to deceive and defraud, and did deceive and defraud Plaintiffs into purchasing ownership of Defendants tennis business and tennis lessons, using the leverage of Plaintiffs blind trust based on being personal friends with The Collards and holding Mouratoglou in high regard.  Defendants knew and relied on the fact that Plaintiffs had no prior tennis business experience as material tenants of

Defendants' conspiracy, fraud, and deception.

40. One of most glaring and compelling examples of Defendants intentional fraud, deceit, and conspiracy, is charging Plaintiffs $275,000 for 5.5 ownership shares ($50,000/each) and tennis lessons, while charging Mouratoglou $1,125,000 for 34% ownership shares (about $34,000/each), and then informing Plaintiffs that *Mouratoglou and The Collards* then agreed to reduce the value of Plaintiffs ownership to $90,000 ($18,000/share).

41. Still in possession of Plaintiffs' $275,000, Defendants also unlawfully increased their ownership value/worth by unlawfully decreasing Plaintiffs' ownership value.

42. Defendants also refused to share any proceeds from the sale to Mouratoglou with Plaintiffs, as well as refused to share business financial documents, profits, and revenue.

43. It has now been over 17 months since Plaintiffs paid their $275,000 and became 5.5% owners, but to date Defendants have refused to deliver or transfer Plaintiffs share to Plaintiffs; refused to provide the tennis lessons; refused to share the proceeds of the sale to Mouratoglou, whereas Plaintiff were part owners at that time; refused to disclose or deliver any profits; refused to disclose or share revenue; refused to share financial documents; and

refused to return Plaintiffs' money despite Plaintiffs' multiple requests.

44. Defendants have intentionally, exclusively, and unlawfully permanently deprived Plaintiffs of the use and benefits of Plaintiff's funds and held exclusive control over Plaintiffs' over-quarter-of-a-million-dollars without Plaintiffs' consent and against Plaintiff's will, with the intent to permanently deprive Plaintiffs of the use and benefits of Plaintiffs funds.

45. Mouratoglou and all three of his subsequently opened tennis busi nesses in Florida have unlawfully benefited from Plaintiffs $275,000 owner ship purchase of Tennis Pro, which Mouratoglou also owns.

46. The Collards, individually and through their Tennis Pro business in Florida have unlawfully benefited from Plaintiffs $275,000 ownership pur chase of Tennis Pro, which The Collards also own.

47. To date, no Defendant has returned Plaintiffs' money; delivered or transferred the ownership shares to Plaintiffs; provided the tennis lessons to Plaintiffs' children; shared any revenue or profits with Plaintiffs, nor al lowed Plaintiffs to benefit from their multi-year ownership in Tennis Pro in any way.

48. Despite Plaintiff's multiple attempts to resolve this issue without liti gation, all attempts have been fruitless. Instead, Defendants gave Plaintiffs

the runaround to contact Defendants' separate counsel, only for Defendants' attorneys to instruct Plaintiffs not to contact them again regarding this matter.

49. Defendants' unlawful acts preyed upon friends – Plaintiffs --  whom Defendants knew would earnestly trust and rely upon Defendants' business promises and representations, and Plaintiffs did trust and rely on Defendants' business promises and representations to the substantial detriment of Plaintiffs financially and otherwise.

50. Plaintiffs suffered a substantial financial change in position to Plaintiff's detriment due to Defendants' unlawful actions.

51. Plaintiffs are experiencing marital strain due to Defendants unlawful contractual breach actions including Defendant's repeat refusal to return Plaintiffs' $275,000, which was a substantial unlawful contractual financial loss to Plaintiffs.

52. Plaintiffs were also forced to retain counsel to bring this action to recover damages from Defendants arising from Defendants' unlawful contract breaches against Plaintiffs complained of herein.

53. Defendants had an independent fiduciary duty of care to Plaintiffs not to convert Plaintiffs' funds, not to defraud Plaintiffs, not to conspire or work

in concert to defraud, convert, or waste Plaintiffs' assets, or otherwise act unlawfully against Plaintiffs.

54. Defendants are private companies who acted egregiously, deliberately, intentionally, and/or recklessly, to induce, deceive, and defraud Plaintiffs. The damages they caused Plaintiffs were foreseeable to Defendants. Defendants should be punished for their acts against Plaintiff by punitive damages being awarded to Plaintiffs.

55. Plaintiffs also seek recovery of all attorney's fees in this matter.

## IV. <u>FEDERAL CLAIMS</u>

### <u>COUNT I:</u>
### <u>FEDERAL CIVIL R.I.C.O.</u>/<u>18 U.S. Code §§ 1964 and 1962</u>

### <u>ALL DEFENDANTS</u>

56. Plaintiff re-alleges and incorporates paragraphs 1 – 56 as if plead herein.

57. At all times material hereto, Defendants were licensed businesses owned by The Collards and Mouratoglou located, headquartered in, and doing business in Florida and operating in interstate commerce through publicly advertising, marketing, offering, and providing their tennis business service and products to consumers in Florida and other states, for a fee.

58. Defendants are businesses with a corporate structure, having business

officers and/or managers, business locations, employees, counsel, marketing and selling their business services to the public, and doing business in interstate commerce.

59. Their officers, leaders, managers, and/or employees participated in Defendants scheme against Plaintiffs described herein, at the direction and agreement of The Collards and Mouratoglou, whether express or implied.

60. At all times Defendants intended to establish and operate their unlawful scheme, practice, and/or pattern of racketeering activity against Plaintiffs purely for Defendants financial gain or benefit, and to the harm, coercion, misleading, to/of Plaintiffs.

61.  Defendants are subject to the federal civil R.I.CO. Act.

62. Defendants businesses are an enterprise, business, and person operating in interstate commerce under and/or for the purposes of 18 U.S. Code §§ 1964 and 1962.

63. At all times material hereto, Defendants established, set up, and operated, an intentional scheme, pattern, and /or practice of racketeering activity to deceive, mislead, and/or defraud Plaintiffs – their consumer -- for the sole purpose of increasing business and personal revenue and financial gains for Defendants.

64. Defendants, in agreement with one another and without Plaintiffs' consent, substantially and unlawfully arbitrarily diluted the value of Plaintiffs ownership $275,000 to $90,000, to increase Defendants' ownership financial gain and worth.

65. Defendants, in further agreement with one another, defrauded Plaintiffs in the inducement to purchase the ownership shares at a price substantially higher than charged to Mouratoglou a relatively shorter time thereafter, refused to share any proceeds of Mouratoglou's purchase with Plaintiffs, and then unlawfully diluted the value of Plaintiffs financial worth in the business.

66. Defendants, in agreement with one another, converted Plaintiffs' funds.

67. Defendants, in agreement with one another, refused to honor their contract with Plaintiffs.

68. Defendants, in agreement with one another, refused to return Plaintiffs' money.

69. Defendants duty of care to Plaintiffs as partners were fiduciary duties that also extended beyond their contractual duties to Plaintiffs, creating independent duties of care to Plaintiffs outside of their contractual duties.

70. Defendants opened multiple new businesses and expanded Tennis Pro as benefits of their unlawful acts against Plaintiffs.

71. Defendants' acts of conversion and other acts claimed herein are indictable under federal law, extortionate credit transactions, fraudulent racketeering activities affecting interstate commerce, compelling collection of unlawful debt, threatening and/or filing fraudulent lawsuits to compel and/or induce collection of unlawful debt and/or interference in interstate commerce.

72. Defendants – who operate their businesses in Florida and reside in Florida and California -- intentionally, in agreement with each other, and solely for their own financial gain and benefit in interstate commerce induced and lulled consumer Plaintiffs to enter into a contractual agreement to purchase 5.5% ownership shares and private tennis lessons from Mouratoglou, only to never perform Defendants' part of the contract and refuse to return Plaintiff's money.

73. Defendant's officers and/or managers all the way to their final business decision marker(s) participated in its scheme; inducing, marketing, and contacting Plaintiffs to buy into the business with promised heightened profits and visibility based on Mouratoglou's name being publicly attached to

Tennis Pro, and to receive private tennis lessons for their children from tennis-champion-coach Mouratoglou.

74. Defendants knew that based on Plaintiffs blind trust and reliance on Plaintiffs' personal friendship with The Collards, and Mouratoglou's famed name in tennis, Plaintiffs were a sure bet to blindly spend over a quarter of a million dollars to Defendants.

75. Plaintiffs did spend those funds purchasing ownership in Defendants businesses solely in reliance on that friendship and promises, to Plaintiff's substantial detriment.

76. To date, Defendants remain in agreement in their conversion of Plaintiff's funds; refusal to return Plaintiffs funds despite multiple requests; refusal to disclose and share profits or revenue with Plaintiffs; refuse to provide the agreed tennis lessons; and refusal to meet their fiduciary duty of care to Plaintiffs as business owners and consumers.

77. Defendants' actions were intentional and pierced the veil of any state/federal LLC liability protection as well.

78. As a direct and proximate cause of Defendants civil R.I.C.O. racketeering scheme, Plaintiffs suffered loss of $275,000 cash paid via certified check, loss of interest on their money, loss of use of their money,

loss of profits, loss of revenue, loss of business income, substantial marital strain,  loss of enjoyment of life, inability to pay other due debts, suffered immense emotional stress, costs and expenses, suffered headaches and anxiety, and were forced to retain counsel to defend against Defendants unlawful scheme.

79. Defendants also owe Plaintiffs punitive damages.

Wherefore, Plaintiffs seek total damages in excess of $2,500,000.$^{00}$ From Defendants.

## COUNT II:

## UNFAIR OR DECEPTIVE BUSINESS PRACTICES
## FTC ACT: UNFAIR OR DECEPTIVE ACTS OR PRACTICES/ 15 U.S.C. § 45

## ALL DEFENDANTS

80. Plaintiff re-alleges and incorporates paragraphs 1 – 56 as if plead herein.

81. At all times material hereto, Defendants were licensed businesses located, headquartered, and doing business in Florida operating in interstate commerce through publicly advertising, marketing, offering, and providing their tennis business services and products to consumers in Florida and other states, for a fee.  Defendants are subject to the FTC.

82. At all times material hereto, Defendants intentionally, knowingly,

recklessly, and/or with deliberate indifference, committed acts and prac
tices of misleading, defrauding, coercing, inducing, aggressive and preda
tory marketing of its tennis business products and services to consumers
such as Plaintiffs.

83. Defendants committed bait-and-switch financial schemes against
Plaintiffs regarding their business contractual and fiduciary duties for the
sole purpose of Defendants financial gain, which caused and/or was likely
to cause injury to consumers such as Plaintiffs, were not outweighed by
countervailing benefits to consumers such as Plaintiffs, and mislead and
misrepresented its services and fees to consumers such as Plaintiffs.

84. Plaintiffs did suffer harm solely as a result of Defendants deception
and bait-and-switch financial scheme, to include Defendants use of and
conversion of Plaintiff's funds, breach of contract, and civil conspiracy.

85. As a direct and proximate cause of Payroll's unfair or deceptive
practices or acts against Plaintiff under the FTC Unfair or Deceptive Prac
tices or Acts, Plaintiffs suffered loss of business income, loss of business
reputation, loss of $275,000 cash, loss of interest on that $275,000, loss of
profits and revenue, mental anguish, emotional distress, marital strain,
costs and expenses, were forced to retain counsel to recover damages

against Defendants.

86.Defendants also owe Plaintiffs punitive damages for the egregious, in

tentional and fraudulent conduct.

Wherefore, Plaintiffs seek damages in excess of $2,500,000.$^{00}$ from Defend-

ants.

## V. STATE CLAIMS

### COUNT III:
### COMMON LAW CONVERSION

### MOURATOGLOU AND THE COLLARDS

87. Plaintiffs re-allege and incorporate paragraphs 1 – 56 as if plead

herein.

88. Without Plaintiffs' consent, Defendants permanently deprived Plain

tiffs of access to and the use of Plaintiffs $275,000.

89. The loss did not occur through an investment loss of shares on a

public exchange.  Plaintiffs funds were not a gift.

90.Defendants had no authority over Plaintiffs money because Defend

ants failed to deliver any ownership shares to Plaintiffs and at all times pre-

cluded Plaintiffs from acting or exercising any ownership rights.

91.Defendants repeatedly refused to return Plaintiff's money at

Plaintiffs' request.  Plaintiffs were the 100% owners of their property of $275,000.

92. As a direct and proximate cause of Mouratoglou and The Collard's conversion of Plaintiffs property, Plaintiffs suffered loss of $275,000, loss of interest on that $275,000, loss of business income, loss of profits and revenue, mental anguish, emotional distress, marital strain, costs and expenses, negative creditworthiness, and were forced to retain counsel to recover damages against Defendants.

93. Defendants also owe Plaintiffs punitive damages for the egregious, intentional and fraudulent conduct.

Wherefore, Plaintiffs seek total damages in excess of $2,500,000.00 from Defendants

### COUNT IV:

### CIVIL FRAUD IN INDUCEMENT/ F.S. §§817.03 and .06

### MOURATOGLOU and THE COLLARDS

94. Plaintiffs re-allege and incorporate paragraphs 1 – 56 as if pled herein.

95. At all times material hereto, Mouratoglou and The Collards intended to dishonestly induce Plaintiffs into accepting The Collards offer of $275,000 to purchase ownership in Tennis Pro, and Mouratoglou's offer of private

tennis lessons by Mouratoglou for the Plaintiffs children, solely for the un-lawful gain and financial benefits of expansion of Tennis Pro and creating a monopoly of tennis-related businesses and services for Mouratoglou and The Collards, at the financial detriment of Plaintiffs.

96. Mouratoglou and The Collards knew that Plaintiffs would blindly trust whatever these two Defendants promised based on Plaintiffs' personal friendship with The Collards, and Moruatoglou's famed name in the tennis industry as a championship tennis coach.

97. Mouratoglou and The Collards knew their actions would cause Plain tiffs to take the intended action of entering into a contract with Mouratoglou and The Collards. And Plaintiffs did enter into contracts with The Collards and Mouratoglou solely due to the actions of those two Defendants.

98. Plaintiffs suffered severe substantial financial harm, martial harm, mental anguish, emotional distress, and business harm as the sole result of the inducement to enter into contract with these Defendants.

99. Plaintiffs harm was foreseeable to and intended by these two Defend ants.

100.    As a direct and proximate cause of Mouratoglou and The Col lard's fraudulent inducement, Plaintiffs suffered loss of $275,000, loss of

interest on that $275,000, loss of business income, loss of profits and revenue, mental anguish, emotional distress, marital strain, costs and expenses, negative creditworthiness, and were forced to retain counsel to recover damages against Defendants.

101.    Defendants also owe Plaintiffs punitive damages.

Wherefore, Plaintiffs seek total damages in excess of $2,500,000.00 from Defendants

## COUNT V:

## FUNDAMENTAL MATERIAL BREACH OF CONTRACT /F.S. §671.202

## MOURATOGLOU AND THE COLLARDS

102.    Plaintiff re-alleges and incorporates paragraphs 1 – 56 as if pled herein.

103.    At all times material hereto, The Collards and Plaintiffs were competent adults who had a valid, lawful, written contract evidencing meeting of the minds, offer, consideration, and acceptance for 5.5% ownership of Tennis Pro and private tennis lessons by Mouratoglou, for the consideration of $275,000.

104.    At all times material hereto, Mouratoglou and Plaintiffs were competent adults who had a valid, lawful, written contract evidencing

meeting of the minds, offer, consideration, and acceptance for private tennis lessons by Mouratoglou for Plaintiffs children, for the consideration of $275,000.

105.    Mouratoglou also bought into Tennis Pro as a majority owner and became subject to Tennis Pro's continuing contract with Plaintiffs, to include all duties to Plaintiffs under that contract to deliver 5.5% ownership shares, private tennis lessons for Plaintiffs children, and all other partnership and business duties under the contract.

106.    At all times material hereto, Plaintiffs performed their duties under the contract by paying the consideration of $275,000. The Collards and Mouratoglou accepted Plaintiffs consideration.

107.    However, at all times material hereto, both The Collards and Mouratoglou breached and failed to perform their duties under the contract, and did not cure their defects despite multiple opportunities to do so.

108.    Neither The Collards nor Mouratoglou ever delivered Plaintiffs ownership shares to Plaintiffs, gave tennis lessons to Plaintiffs children by Mouratoglou, shared business profits or revenue with Plaintiffs, disclosed business financial statements to Plaintiffs, and precluded Plain

tiffs from exercising ownership authority and benefits.

109.    Due to the breach by Mourtaglou and The Collards, Plaintiffs lawfully demanded return of their $275,000.

110.    To date, Mouratoglou and The Collards refuse to return Plaintiffs money/consideration, despite remaining in breach.

111.    Mouratoglou and The Collards remain in breach today.  At all times material hereto, Mouratoglou and The Collards had the ability to perform the contract.

112.    Plaintiffs have the right to demand all of their money back plus further damages.

113.    As a direct and proximate cause of Mouratoglou and The Collard's fundamental breach of contract, Plaintiffs suffered compensatory damages, consequential damages, and punitive damages, including but not limited to loss of $275,000, business revenue and profits, interest, costs and expenses, negative creditworthiness, and were forced to retain counsel to recover damages against Defendants.

114.    Defendants also owe Plaintiffs punitive damages.

Wherefore, Plaintiffs seek total damages in excess of $2,500,000.00 from Defendants.

## <u>COUNT VI:</u>
## <u>PUNITIVE DAMAGES</u>

## <u>ALL DEFENDANTS</u>

115.      Plaintiff re-alleges and incorporates paragraphs 1 – 56 as if pled herein.

116.      Defendants Mouratoglou and The Collards, for their own personal gain individually, and for an in behalf of their Defendant businesses named herein as the owners and final decision makers, committed oppression, fraud, and malice, intentionally or with deliberate indifference, against Plaintiffs.

117.      Defendants unlawful actions complained of herein solely caused substantial harm to Plaintiffs financially, business wise, mentally, reputationally, emotionally, and maritally.

118.      Defendants acted with a conscious disregard for Plaintiffs rights.

119.      Defendants subjected Plaintiffs to cruel and unjust hardship to the point where Plaintiffs were unable to timely pay their bills and considering divorce due to the marital strain caused by Defendants ongoing refusal to return Plaintiff's money.

120.      Mouratoglou and The Collards intentionally concealed the fact

that they never intended to honor the contract nor return Plaintiffs' money, immediately telling Plaintiffs that the $275,000 was absurdly only worth $90,000 after inducing Plaintiffs to sign the contract selling 34% of Tennis Pro to Mouratoglou.

121.    The facts plead herein show that Plaintiffs are entitled to puni tive damages for Defendants' conspiracy and civil R.I.C.O.

122.    The facts plead herein show that Plaintiffs are entitled to puni tive damages for Defendants unfair trade practices.

123.    The facts plead herein show that Plaintiffs are entitled to puni tive damages for Defendants' conversion of Plaintiffs' property.

124.    The facts plead herein show that Plaintiffs are entitled to puni tive damages for Defendants fraudulent inducement.

125.    The facts plead herein show that Plaintiffs are entitled to puni tive damages for Defendants fundamental material breach of contract.

126.    At all times material hereto, the named Defendants acted with conscious disregard, malice, oppression, and/or fraud against Plaintiffs, and caused Plaintiffs substantial harm as a sole result.

127.    Punitive damages should be awarded to Plaintiffs.

## VII. ATTORNEY'S FEES

80.  If Plaintiffs prevail in this action, by settlement or otherwise, Plaintiffs are entitled to and hereby demand attorney's fees under federal and state laws claimed herein.

## VIII. JURY DEMAND

81. Plaintiffs respectfully requests a jury trial on all claims in this matter.

**WHEREFORE, ALL PREMISES CONSIDERED**, Plaintiffs pray that judgment be rendered against Defendants.  Plaintiffs further pray for all other relief, both legal and equitable, to which he may show himself justly entitled.

Respectfully Submitted this **17th day of January 2026**

By: /s/ Frank T. Allen
FRANK T. ALLEN, Esquire
Florida Bar No. 0033464
THE ALLEN FIRM, P.A.
2852 Maguire Rd., Ste 130
OCOEE, Florida  34761
(407) 481-8103
Attorneys for Plaintiffs.