UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ONYEKACHI NWABUKO, et al.,

Plaintiffs,

v.

CASE NO. 8:26-cv-00148-SDM-AAS

PATRICK MOURATOGLOU, et al.,

Defendants,

___________________________________/

**ORDER**

In their original complaint (Doc. 1), the plaintiffs, each a Florida citizen, sue (1) Pascal and Gabriella Collard (the Collards), each a Florida citizen; (2) Tennis Pro Florida, LLC, a Florida citizen; (3) Patrick Mouratoglou, a California citizen; and (4) Mouratoglou Tennis Center Zephyrhills, LLC, a Delaware citizen. The original complaint asserts four claims arising under Florida law but predicates jurisdiction on an alleged violation of the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1964. An earlier order (Doc. 29) dismisses without prejudice the original complaint and observes that "[t]he complaint falls so short of the pleading standard of Rule 8 (and especially the heightened pleading standard governing fraud and the stringent requirements governing a civil RICO claim) that a claim-by-claim analysis would serve little purpose."

The amended complaint, which sprawls across eighty-nine pages, asserts thirty mostly duplicative counts, and abandons entirely the claims asserted in the original complaint, predicates subject-matter jurisdiction on an alleged "civil conspiracy" under 42 U.S.C. § 1985 and on alleged violations of the Securities Act of 1933, 15 U.S.C. § 77l.[1] The defendants move (Docs. 40 and 41) to dismiss, and the plaintiffs respond. (Doc. 42)

**BACKGROUND**

On January 4, 2024, the plaintiffs, a married couple, agreed to buy from the Collards, another married couple "friendly with" the plaintiffs, a 5.5% ownership interest in Tennis Pro Florida for $275,000. (Doc. 36 ¶ 28; Doc. 36-1 at 1, 5) On September 7, 2024, the Collards sold to Mouratoglou, a renowned tennis coach and the owner of Tennis Center Zephyrhills, a 34% ownership interest in Tennis Pro Florida for $1,155,000. (Doc. 36-2 at 1, 9, 34) The plaintiffs allege the following "wrongful conduct" in connection with the latter sale:

> [T]he Asset Purchase Agreement and related transaction did not recognize Plaintiffs' 5.5% ownership interest, did not disclose Plaintiffs as owners entitled to participate in the sale proceeds, and did not provide Plaintiffs with their share of the transaction.
>
> Plaintiffs were not given advance notice sufficient to protect their ownership rights.

[1] As in the original complaint, the plaintiffs assert that "[t]he Court also has diversity jurisdiction under 28 U.S.C. § 1332 as Patrick Mouratoglou is a citizen of California and because some of the discussions between the Collards and Mouratoglou occurred while Mouratoglou was in California." Jurisdiction under Section 1332(a) requires complete diversity: no plaintiff may share citizenship with any defendant. Because each plaintiff and at least three defendants are Florida citizens, complete diversity is absent.

> Plaintiffs did not consent to any reduction, dilution, buyout, or revaluation of their 5.5% ownership interest.
>
> Plaintiffs did not agree that their $275,000.00 investment would be reduced to $90,000.00 [the alleged value of their ownership interest after the transaction].
>
> Plaintiffs did not receive 5.5% of the cash consideration.
>
> Plaintiffs did not receive 5.5% of the equity consideration.
>
> Plaintiffs did not receive distributions, dividends, profits, sale proceeds, or a buyout.
>
> Plaintiffs did not receive K-1s or tax documents reflecting their ownership.
>
> Plaintiffs did not receive financial statements, books, records, or an accounting.

(Doc. 36 at ¶¶ 138–146)

## DISCUSSION

### Securities Act Claims

Section 12 of the Securities Act of 1933, 15 U.S.C. § 77l, creates two private actions. Section 12(a)(1) imposes liability for the offer or sale of a security in violation of Section 5's registration requirement, 15 U.S.C. § 77e. A prima facie Section 12(a) claim requires (1) the sale or offer to sell a security, (2) the absence of a registration statement covering the security, and (3) the use of the mails or of interstate commerce in connection with the sale or offer. *Swenson v. Engelstad*, 626 F.2d 421, 424–25 (5th Cir. 1980). Section 12(a)(2) imposes liability for the offer or sale of a security "by means of a prospectus or oral communication" that "includes an untrue statement of a material fact or omits to

state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading." 15 U.S.C. § 77l(a)(2); *Ehlert v. Singer*, 245 F.3d 1313, 1315–16 (11th Cir. 2001). The claims fail for several independent reasons.

The 5.5% Interest Is Not a "Security"

A membership interest in a limited liability company is a "security" only if the interest satisfies the four-part test of *SEC v. W.J. Howey Co.*, 328 U.S. 293, 298–99 (1946), including the requirement that the investor expect profit "derived from the entrepreneurial efforts of others." *Keith v. Black Diamond Advisors, Inc.*, 48 F. Supp. 2d 326, 332 (S.D.N.Y. 1999). A member's right to vote and to manage is "antithetical to the notion of member passivity" that *Howey* requires. *Keith*, 48 F. Supp. 2d at 333; *accord Gordon v. Terry*, 684 F.2d 736, 741 (11th Cir. 1982) ("An investor who has the ability to control the profitability of his investment, either by his own efforts or by majority vote in group ventures, is not dependent upon the managerial skills of others.").

The plaintiffs allege that the plaintiffs enjoyed voting rights, that the defendants treated the plaintiffs as members, that a September 30, 2024 written consent lists the plaintiffs as members, that the defendants invited the plaintiffs to member meetings, and that the plaintiffs by proxy delegated voting authority to the Collards. (Doc. 36 ¶¶ 46, 49, 61–63, 82–89, 109, 112) The delegation "does not diminish in the least" a holder's legal right to a voice. *Hirsch v. duPont*, 396 F. Supp. 1214, 1220 (S.D.N.Y. 1975). The plaintiffs' allegations

refute the passivity that *Howey* demands; the interest is not a "security"; and absent a security, neither Section 12(a)(1) nor Section 12(a)(2) supports a claim. *See Faye L. Roth Revocable Trust v. UBS PaineWebber Inc.*, 323 F. Supp. 2d 1279, 1299 (S.D. Fla. 2004).

Section 12(a)(2) Does Not Govern a Private Sale

A "prospectus" is "a term of art referring to a document that describes a public offering of securities by an issuer or controlling shareholder," and a private contract of sale "not held out to the public" is "not a prospectus as the term is used in the 1933 Act." *Gustafson v. Alloyd Co.*, 513 U.S. 561, 584 (1995). Because Section 12(a)(2) liability "cannot attach unless there is an obligation to distribute the prospectus in the first place (or unless there is an exemption)," *Gustafson*, 513 U.S. at 571, "a Section 12(a)(2) action cannot be maintained by a plaintiff who acquires securities through a private transaction, whether primary or secondary." *Yung v. Lee*, 432 F.3d 142, 149 (2d Cir. 2005); *accord Budget Rent A Car Sys., Inc. v. Hirsch*, 810 F. Supp. 1253, 1258 (S.D. Fla. 1992). The amended complaint describes a private, one-on-one negotiation and sale of a single 5.5% interest, memorialized in a privately executed purchase agreement. (Doc. 36 ¶¶ 69–81) The sale occurred not "by means of a prospectus," and Section 12(a)(2) supplies no claim.

Each Section 12 Claim is Time-Barred

An action under Section 12(a)(1) must begin "within one year after the violation upon which it is based," and an action under Section 12(a)(2) must

begin "within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence." 15 U.S.C. § 77m. The sale closed in January 2024 and the plaintiffs allege that throughout 2024 the plaintiffs demanded ownership documentation and knew that the defendants' promises all remained unfulfilled. (Doc. 36 ¶¶ 94-97, 101–12, 150) The plaintiffs discovered or through reasonable diligence should have discovered the alleged misstatements and omissions no later than the end of 2024, more than a year before this action began. Section 77m bars each claim.

**The Plainitffs Fail to Allege a Conspiracy Aimed at a Right Constitutionally Protected Against Private Impairment**

"The elements of a cause of action under Section 1985(3) are: (1) a conspiracy, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy, (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Korts v. Littleton*, No. 8:09-cv-2122-T-23TGW, 2009 WL 5067651, at *1 (M.D. Fla. Dec. 16, 2009) (quoting *Trawinski v. United Techs.*, 313 F.3d 1295, 1299 (11th Cir. 2002)). But "[w]hen the alleged § 1985(3) conspirators are private actors, the plaintiff must demonstrate that the conspiracy was aimed at rights constitutionally protected against private impairment," and "[t]he only rights the

Supreme Court has expressly declared enforceable against private conspirators under § 1985(3) are the right to interstate travel and the right against involuntary servitude." *Jimenez v. Wellstar Health Sys.*, 596 F.3d 1304, 1312 (11th Cir. 2010) (citations omitted). Section 1985(3) supports no claim that private actors conspired to deprive a person of a property or contract right. *Jimenez*, 596 F.3d at 1312.

The plaintiffs identify no conspiracy aimed at a right protected against private impairment. Instead, the plaintiffs, one of whom is Black and one of whom is Indian, offer only this conclusory allegation:

> Defendants conspired, expressly or impliedly, to deprive Plaintiffs of equal protection of the laws and/or equal privileges and immunities under the laws by depriving Plaintiffs of the full benefit and enforcement of their contractual and property rights while recognizing, protecting, paying, or benefiting other non-Black members, owners, managers, sellers, or transaction participants in connection with Tennis Pro Florida, LLC and the Asset Purchase Agreement.

The alleged denial of "the full benefit and enforcement of [the plaintiffs'] contractual and property rights" implicates no right constitutionally protected against private impairment and supports no claim under Section 1985(3).

## CONCLUSION

For these reasons and for other reasons stated in the motions to dismiss, the motions to dismiss (Docs. 40 and 41) are **GRANTED**. Counts I–III, which assert claims under Section 12 of the Securities Act of 1933, and Counts

VII–IX, which assert a conspiracy under 42 U.S.C. § 1985(3), are **DISMISSED WITH PREJUDICE**. In accord with 28 U.S.C. § 1367(c)(3), the court declines to exercise supplemental jurisdiction over the remaining claims, each of which arises under Florida law. Accordingly, Counts IV–VI and XII–XXX are **DISMISSED WITHOUT PREJUDICE**. The clerk must close the case.

**ORDERED** in Tampa, Florida, on July 21, 2026.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE